# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYURI DE LOS ANGELES VALLECILLO ZEPEDA,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, ET AL.,<br><br>Respondents. | Case No. 2:26-cv-05012-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

## I.

## INTRODUCTION

On May 8, 2026, Petitioner Maryuri de los Angeles Vallecillo Zepeda ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging her detention in immigration custody. (Dkt. 1 at 2.) On May 15, 2026, Respondents Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"), Todd Blanche, Acting U.S. Attorney General, Jaime Rios, Acting Field Office Director of ICE, and Fereti Semaia, Warden of Adelanto

Detention Center (collectively, "Respondents") filed an Answer to the Petition (the "Answer") stating that "[t]he Respondents are not presenting an opposition argument at this time." (Dkt. 9 at 2.) Also on May 15, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 10.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 4, 7.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on her prior conditions of supervision that existed prior to her detention on May 7, 2026.**

## II.

### FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which are supported by declarations from Petitioner and her attorneys. (Dkt. 1-1 at 17-21.) Respondents had the opportunity to dispute the facts alleged in the Petition, but declined to do so. (Dkt. 9.) Indeed, "Respondents are not presenting an opposition argument at this time." (Id. at 2.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of Nicaragua. (Dkt. 1 at 2.) On or about November 21, 2022, Petitioner entered the United States near Paso de Norte, Texas, where she was apprehended and detained by immigration authorities. (Id.) Petitioner was subsequently released on an Order of Recognizance ("OROR") and placed under and Order of Supervision ("OSUP"), after being granted humanitarian parole. (Id.) Following her release, Petitioner consistently complied with all terms of supervision, including appearing for required in-person ICE check-ins. (Id.) Petitioner remained in ongoing immigration proceedings during this period. (Id.)

On May 7, 2026, Petitioner appeared for a routine ICE check-in and was taken into custody by ICE.  (Id. at 2-3.)  Petitioner has remained in immigration detention since that date.  (Id. at 3.)  Petitioner has not been made aware of any allegation of non-compliance or violation of supervision.  (Id.)  Petitioner also has not been made aware of any material change in circumstances following her release on supervision.  (Id. at 6.)  Petitioner has remained in immigration detention continuously since May 7, 2026.  (Id.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief alleges that Respondents are holding Petitioner in federal custody in violation of the U.S. Constitution.  (Dkt. 1 at 16.)  Petitioner's second claim for relief alleges that the Government's detention of Petitioner without notice or a change in material circumstances violates her right to due process.  (Id. at 17.)  Petitioner's third claim for relief alleges that Respondents' detention of Petitioner violates her rights under the Fourth and Fifth Amendments.  (Id. at 17-18.)  Petitioner's fourth claim for relief alleges that Petitioner has been denied a bond hearing in violation of her statutory rights under the Immigration and Nationality Act ("INA") and the binding judgment in Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025).  (Id. at 18-19.)  Petitioner seeks immediate release from custody or in the alternative, a bond hearing within seven days.  (Id. at 19.)  Petitioner also seeks an award of attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").  (Id. at 20.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that

these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions

4

which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner entered the United States on or about November 21, 2022, and was subsequently released on an OROR and placed under an OSUP, after being granted humanitarian parole.[1]  (Dkt. 1 at 2.)  It is also

---

[1] The fact that Petitioner was released from custody necessarily means that she demonstrated to the satisfaction of immigration officials that her release would not (cont'd . . .)

undisputed that Petitioner was in full compliance with the conditions of her supervision.  (Id.)  Thus, the Court concludes that once Petitioner was released from custody on parole, she acquired "a protected liberty interest in remaining out of custody."  Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release."  Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the several years she spent out of custody building a life for herself in the United States.  See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was detained without notice or a pre-deprivation hearing.  (Dkt. 1 at 2-3, 6.)  Thus, the Court concludes that Petitioner's

---

pose a danger to property or persons and that he was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

detention by ICE on May 7, 2026, without notice or a pre-deprivation hearing, violated her procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's prior release on parole before her current re-detention.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-

7

deprivation hearing before Petitioner may be re-detained.  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

The Court notes that "Respondents are not presenting an opposition argument at this time."  (Dkt. 9 at 2.)  Therefore, Respondents have consented to the relief requested by Petitioner.  See C.D. Cal. L.R. 7-12.  Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees under the EAJA. (Dkt. 1 at 20.)  The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action.  See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is

filed within 30 days of final judgment in this action.").

# VI.

# CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner from custody on her prior conditions of supervision that existed prior to her detention on May 7, 2026 and return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance within twenty-four hours of entry of Judgment.

IT IS SO ORDERED.

DATED:  May 18, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

9